**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| LISA PITTMAN, | : | |
| Plaintiff, | : | Case No. 3:07CV00365 |
| vs. | : | District Judge Walter H. Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social Security Administration, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATIONS[1]**

## I. INTRODUCTION

Plaintiff Lisa Pittman suffers from back pain, stomach pain, and depression. (Tr. 73, 113). Her impairments prevent her from performing her past work as a customer service representative, cashier clerk, lens fabricator, and material handler. (Tr. 74, 104-07, 125, 468-69). On October 30, 2003 Plaintiff sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) claiming she had been under a disability since March 15, 2003. (Tr. 63-66, 451-53).

After various administrative proceedings, Administrative Law Judge (ALJ) James I.K. Knapp denied Plaintiff's DIB and SSI applications based on his conclusion that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 21-37). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g) and 1383(c)(3),

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #11), the administrative record, and the record as a whole.

Plaintiff seeks a reversal of the ALJ's decision or, at a minimum, a remand of this case to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II. FACTUAL BACKGROUND

At the time of the ALJ's decision, Plaintiff's age (43) placed her in the category of a "younger individual" for purposes of resolving her DIB and SSI applications. *See* 20 C.F.R. §§404.1563 (c), 416.963 (c); s*ee also* Tr. 37. Plaintiff earned a GED, the equivalent to a high school education. *See* Tr. 79.

Plaintiff testified during the ALJ's hearing that she stopped working in March 2003 due to pain. (Tr. 469). She has constant pain, which began in her stomach; she later began to suffer back pain. (Tr. 470). At the time of the ALJ's hearing, she mostly experienced pain in her back. (Tr. 471). Prescription medications (Morphine, Tramadol) reduce her pain by approximately 50%, but the pain never completely went away, and her medications decrease her ability to concentrate. (Tr. 470-71, 473). Her back pain used to go into her thighs, but now she just had a constant aching feeling in her legs. (Tr. 472). She stated that it was diagnosed as restless leg syndrome, and she took Klonopin, which helped. (Tr. 472). Plaintiff also complained of swelling in her legs, for which she took a water pill and wore special hosiery. (Tr. 474).

Plaintiff further testified that she suffered from depression, had nightly crying spells, and stayed by herself in her bedroom. (Tr. 475, 490-91). She takes medication (Effexor) and sees a mental health counselor every two weeks due to depression. (Tr. 474).

Plaintiff testified about her limited daily activities. She lives with her two adult

children. (Tr. 468). She watches television and flips through books looking at the pictures. (Tr. 476). During the day, she did not sleep, she would just lay down and close her eyes. (Tr. 477). She estimated she would sleep two to three hours during the night. (Tr. 476). She drove once every two weeks. (Tr. 468). She did not cook, clean, or do laundry. (Tr. 478). Her daughter performs most of the household chores. (Tr. 478). She went to the store with her adult daughter about once a month. (Tr. 478). She estimated that she visits her father once every two weeks or once a month. (Tr. 479). She also testified that she does not do much visiting, but her mother visited her every other day; she does not go to the movies; she has no hobbies; and she did not do yard work or gardening; she did not cook (her daughter did the cooking); she did not clean the dishes, load the dishwasher, sweep or vacuum, do the laundry, or make her own bed. (Tr. 478-79, 487).

Plaintiff estimated that she could stand for 20 minutes, if she could lean on something for support. (Tr. 477). She could sit for 20 minutes but would then need to stand up or lie down. (Tr. 477). She could lift her purse. (Tr.478). She used to be able to carry groceries but cannot do so. (Tr. 477-78).

Turning to the other evidence and other information in the administrative record, the parties have provided informative and detailed descriptions of that evidence. *See* Doc. #9 at 3-11; Doc. #11 at 3-11. In light of this, and upon consideration of the complete administrative record, additional detailed discussion of the record would be unnecessarily duplicative. Yet a brief description of the medical sources upon whom the parties rely will help frame further review.

Plaintiff relies on the opinions of her primary care physician, Dr. Peterangelo, who indicated in November 2005 that Plaintiff was "totally disabled from chronic low back pain with a radicular component" (Tr. 375) and that she was "unable to work full time or part time due to chronic low back pain with a [right] Lumbar Radiculopathy." (Tr. 377). In support of the latter opinion, Dr. Peterangelo relied on the lack of relief Plaintiff

3

obtained from physical therapy, nerve blocks, and discogram block. *Id*. Dr. Peterangelo also relied on the results of MRIs performed in October 2000 and March 2005. *Id*. Dr. Peterangelo further indicated that Plaintiff suffered from chronic lower abdominal pain from pelvic adhesions and that she was chronically depressed. (Tr. 375). Dr. Peterangelo opined that Plaintiff was markedly impaired in social functioning and in maintaining concentration, persistence, and pace due to pain and depression. (Tr. 381). He also opined that Plaintiff could lift and carry 5 pounds occasionally and 2.5 pounds frequently, and she could stand/walk and sit a total of 3 hours each in a workday due to low back pain with impingement of the L5 nerve root. (Tr. 383). And Dr. Peterangelo believed that Plaintiff was not capable of performing sedentary work on a sustained basis during an eight-hour work day. (Tr. 386).

Plaintiff also relies on the similar opinions of Dr. Gupta, her treating pain specialist. Dr. Gupta assessed Plaintiff's physical abilities in February 2006. (Tr. 401-05). He opined that degenerative disc disease in the lumbar spine and annular tears of the lumbar discs limited Plaintiff to lifting less than 10 pounds occasionally and less than 5 pounds frequently. Plaintiff could stand or walk for one or two hours in a workday with alternating positions; she could sit for only one or two hours in a workday with alternating positions; she could never climb, crawl, push, or pull; and she could occasionally balance, stoop, crouch, or kneel. *Id.* Dr. Gupta further noted that Plaintiff was limited from working at heights, temperature extremes, vibration, and humidity. He concluded that chronic back pain prevented Plaintiff from performing even sedentary work during an eight-hour work day. *Id.*

As to her mental impairments, Plaintiff relies on the opinions of treating clinical nurse specialist in psychiatry, Ms. Van Ausdal, who concluded in March 2005 that Plaintiff suffered from recurrent major depression along with a post-traumatic stress disorder related to the death of her brother and a friend. (Tr. 272-80; 366-73). Van Ausdal noted that Plaintiff's pain complicated her mental health. Van Ausdal further also

4

noted that due to the chronic and unpredictable nature of her condition, Plaintiff would be unable to complete a normal workday and workweek without interruption from psychologically and/or physically based symptoms. *Id.* Van Ausdal opined that Plaintiff would be unable to perform adequately in seven out of sixteen areas of mental functioning including: being prompt and regular in attendance, withstanding pressure of normal standards of work productivity, completing a normal workday and work week without interruptions from any psychological symptoms, responding appropriately to changes in work setting, working in coordination with others, accepting instructions, and responding appropriately to criticism from supervisors. *Id*.

The Commissioner relies on the opinions of a one-time examiner, Dr. Koppenhoefer, who concluded in July 2006 that Plaintiff's back pain was probably related to degenerative changes in the lumbosacral spine. (Tr. 441-50). His examination revealed no evidence that Plaintiff had lumbosacral radiculopathy, lumbar stenosis, or any herniated lumbosacral disc. *Id.* Dr. Koppenhoefer opined that Plaintiff was limited from doing activities which would require repetitive bending, stooping, and asymmetric lifting. *Id.* He further opined that Plaintiff could lift and carry 25 pounds frequently and 35 pounds occasionally. *Id.* She had no restrictions in standing, walking, or sitting. *Id.* Stooping and crouching could be done only occasionally. *Id.* There were no other postural or environmental restrictions. *Id.*

Regarding Plaintiff's physical limitations, the Commissioner also relied on the opinions of Dr. Heban, a physician who reviewed the record for the Ohio Bureau of Disability Determinations (Ohio BDD) in February 2004. (Tr. 207-212). Dr. Heban opined that Plaintiff could perform the exertional requirements of light work. (Tr. 209). He explained that Plaintiff had a five-year history of low back pain "with L4-5 disc dehydration, disc bulge, and herniation. She has significant pain when she spends an extensive amount of time sitting, standing, or walking. She has localized pain over lumbar area and difficulty going from sitting to standing position. She also has some

radiation to the [left leg]. Doctor has suggested lumbar fusion, but no procedure has been done at this time." (Tr. 209-10). Dr. Heban also opined that Plaintiff could occasionally climb ladders, ropes, and scaffolds, stoop, and crouch. (Tr. 220).

The Commissioner relies on the opinions of one-time examining psychologist Dr. Schultz (Tr. 429-440), and record-reviewing psychologist Dr. Steiger (Tr. 213-227). In June 2006 Dr. Schulz opined that Plaintiff's ability to understand, remember and follow instructions was moderately impaired and her ability to withstand the stress and pressures associated with day-to-day work activity was moderately impaired. (Tr. 435). Dr. Steiger opined, in June 2004, that Plaintiff could perform 1-2 step tasks in an environment that did not require strict production quotas, pressures to perform rapidly, or frequent interactions with others and limited her to no more than occasional contact with co-workers or members of the public. (Tr. 227).

## III. ADMINISTRATIVE REVIEW

The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986). A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Tr. 23-31; *see also* 20 C.F.R.

§§404.1520(a)(4), 416.920(a)(4).[2] Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

In the present case the ALJ found at Step 2 that Plaintiff had the following severe impairments: lumbar degenerative disc disease, generalized abdominal pain, recurrent major depression, and pain disorder due to psychological and medical features. (Tr. 36).

The ALJ determined at Step 3 that Plaintiff does not have an impairment or a combination of impairments that meet or equal one in the Listings. *Id.*

At Step 4 the ALJ found that Plaintiff had the Residual Functional Capacity to perform a limited range of light work.[3] The ALJ described his specific findings as follows:

> The claimant lacks the residual functional capacity to: (1) lift 10

---

[2] The remaining citations will identify the pertinent SSI Regulations with full knowledge of the corresponding DIB Regulations. Plaintiff meets the insured-status requirement for DIB eligibility through December 2008. *See Colvin*, 475 F.3d at 730; *see also* Tr. 36.

[3] The Regulations define light work as involving the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §416.967(b).

7

> pounds frequently or 20 pounds occasionally; (2) stoop or crouch more than occasionally; (3) climb ladders, ropes, or scaffolds; (4) work at unprotected heights or around moving machinery; (5) do any job requiring more than occasional contact with co-workers or members of the public; (6) do other than simple, repetitive tasks; or (7) do other than low stress work activity (i.e., no job involving above average pressure for production, work that is other than routine in nature, or work that is hazardous).

(Tr. 36). This assessment, along with the ALJ's findings throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not under a disability and hence not eligible for DIB or SSI. (Tr. 21-37).

## IV. JUDICIAL REVIEW

Judicial review of an ALJ's decision determines whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Judicial review for substantial evidence is deferential not *de novo*. *See Cruse v. Commissioner of Social Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record – if other substantial evidence supports the ALJ's findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Still, reviewing for substantial supporting evidence is not the stopping point of judicial analysis. Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria. *See Bowen*, 478 F.3d at 746. If the ALJ did not, the decision may not be upheld even when substantial evidence supports the ALJ's

findings. *See id.* For example, a decision will not be upheld where the ALJ failed to apply the standards mandated by the Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein). Through *Bowen* and other recent Sixth Circuit cases, an ALJ's failure to apply the correct legal criteria – at least when evaluating medical source opinions – mandates further judicial review for harmless error. *Bass II v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007); *see Bowen*, 478 F.3d at 747-49; *see also Wilson*, 378 F.3d at 547-49 (offering examples of possible *de minimis* errors). Consequently, if the ALJ erred by not applying the correct legal criteria but the error was harmless, the decision should be affirmed. *See Bass II*, 499 F.3d at 512 (and cases cited therein).

V. **DISCUSSION**

    A. **Medical Source Opinions**

**1.**

Plaintiff contends that the ALJ erred by rejecting the opinions of Dr. Peterangelo, her treating family physician, and the opinions Dr. Gupta, her treating pain specialist. Plaintiff further contends that the ALJ erred by crediting the opinions of Dr. Koppenhoefer, a one-time examining physician, and Dr. Heban, a record-reviewing physician. Plaintiff reasons that the ALJ failed to apply the correct legal criteria during his evaluation of Dr. Peterangelo's and Dr. Gupta's opinions and provided little rationale for why he instead relied on the opinions of Drs. Koppenhoefer and Heban. Plaintiff also maintains that the ALJ never considered the consistency of the opinions of treating physician Dr. Peterangelo and treating specialist Dr. Gupta.

**2.**

Social Security Regulations require ALJs to evaluate every medical opinion of record regardless of its source. *See* 20 C.F.R. §416.927(d). The required evaluation first focuses on treating physicians or psychologists, whose opinions are entitled to controlling

9

weight under the treating physician rule as long as they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record. 20 C.F.R. §416.927(d)(2); *see Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004). When these requirements are not met, the treating physician rule does not apply. *Id*.

Once the ALJ has concluded that the treating physician rule does not apply to a particular treating source's opinion, the evaluation has only just begun. The ALJ must continue to evaluate the treating source's opinion by considering the following additional factors:

1. The length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship;

2. The 'supportability' of the opinion – whether it is supported with relevant evidence and whether it is well explained;

3. The consistency of the opinion with the record as a whole;

4. The specialization, if any, of the treating source; and

5. 'Other factors' brought to the ALJ's attention, including, for example, the treating source's knowledge of the SSI or DIB programs and its evidentiary requirements.

20 C.F.R. §416.927(d)(2)-(6); *see Wilson*, 378 F.3d at 544.

As to non-treating medical sources, such as one-time examiners or medical experts who testify during the administrative hearing, ALJs must evaluate their opinions under the same factors applicable to treating medical sources – supportability, consistency, specialization, *etc*. *See* 20 C.F.R. §416.927(d), (f). The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §416.927(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see also* 20 C.F.R. §416.927(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §416.927(f)(iii) (same as to medical experts' opinions);

Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same).

### 3.

The ALJ correctly described the legal standards applicable under the treating physician rule and also correctly described the additional regulatory factors that apply to treating physicians and other medical sources under 20 C.F.R §§416.927(d) and (f). *See* Tr. 29-33. The ALJ then applied the correct legal criteria to Dr. Peterangelo's opinion, first finding it not entitled to deferential weight because it is not supported by proportionate objective findings and are contradicted by Dr. Koppenhoefer's expert medical opinion. (Tr. 31). The ALJ then found that Dr. Peterangelo's opinions were not due any weight under the factors of supportability, consistency, and specialization. *Id.*; *see* 20 C.F.R. §416.927(d)(3)-(5).

Substantial evidence supports the ALJ's application of the regulatory factors. First, Dr. Koppenhoefer is a physical medicine and rehabilitation specialist. As such, he is a specialist in treating complaints of back pain, while Dr. Peterangelo is a family medicine physician, as the ALJ correctly recognized. *See* Tr. 31-32. Dr. Koppenhoefer's opinion was supported by his clinical findings indicating that Plaintiff had a normal gait in transitional activities, normal straight leg raising, normal range of motion in the lower and upper extremity joints, no atrophy in the lower or upper extremity musculature, and symmetrical reflexes and intact sensation in the lower and upper extremities. (Tr. 442). Moreover, although Plaintiff had limited lumbosacral movement secondary to discomfort, informal observation showed far greater range. (Tr. 442). In arriving at his opinion, Dr. Koppenhoefer also reviewed MRI reports from 2003 and 2005. (Tr. 442). Based on the Dr. Koppenhoefer's specialization as well as the support that he provided for his opinion, the ALJ reasonably gave his opinions more weight than the contrary opinions of Dr. Peterangelo. *See* 20 C.F.R. § 416.9527(d)(3)-(5). In addition, the ALJ reasonably considered Dr. Koppenhoefer's knowledge of the Social Security disability standards when weighing his opinion. *See* Tr. 31-32; *see also* Social Security Ruling 06-03p ("For example, the amount of understanding of our disability programs and their evidentiary requirements that an 'acceptable medical source' has, regardless of the source of that

understanding, and the extent to which an 'acceptable medical source' is familiar with the other information in the case record, are all relevant factors that we will consider in deciding the weight to give to a medical opinion.").

The ALJ recognized that Dr. Gupta has specialization credentials similar to Dr. Koppenhoefer, but the gave no weight to Dr. Gupta's opinion because "they are even more out of line with the objective clinical findings and other substantial evidence in the record." (Tr. 32). The ALJ concluded that Dr. Gupta did not support his opinion with objective medical evidence. *Id.* Dr. Gupta's treatment notes show no neurological symptoms. (Tr. 284-94, 389-99). In August 2005 Dr. Gupta noted that Plaintiff's "current medication seems to be helping." (Tr. 399). In 2006 Dr. Gupta's treatment notes reveal that Plaintiff was doing better and medication was alleviating her pain. (Tr. 391, 389). In light of these treatment notes, substantial evidence supports the ALJ's rejection of Dr. Gupta's opinions.

Accordingly, Plaintiff's challenges to the ALJ's rejection of the opinions of her treating medical sources, Dr. Peterangelo and Dr. Gupta, are not well taken.

### B.  Credibility

Plaintiff argues the ALJ erred in his assessment of Plaintiff's pain testimony, especially in light of her diagnosis of depression and chronic pain disorder. Plaintiff emphasizes that her treating clinical nurse specialist, Van Ausdal, opined that the combination of her physical conditions and emotional problems worsened her mental work abilities but the ALJ rejected this opinion as not consistent with Van Ausdal's treatment notes. Plaintiff points out, "in virtually every treatment note, Ms. Van Ausdal's commented on Ms. Pittman's pain and its affect on her depression." (Doc. #9 at 19).

Plaintiff also argues that the interaction between pain and depression was documented by Dr. Jones, who diagnosed a recurrent major depression along with a pain disorder with medical features, and who opined that the "combined effects of Plaintiff's pain and depression would impair her ability to sustain vocational work." *Id*. at 20

12

(internal punctuation omitted; citing Tr. 204-06).

Pain or other symptoms may be severe enough to constitute a disability, if caused by a medical impairment. *See Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981)(pain alone may constitute a disability); *see also* 20 C.F.R. §416.29. When evaluating pain or other symptoms, the Commissioner's Regulations require ALJs to consider all the evidence including medical history, medical signs and laboratory findings, the claimant's statements, and treating and other medical source opinions. 20 C.F.R. §416.929(c)(1). Although the Regulations concerning pain and other symptoms are lengthy, the Sixth Circuit Court of Appeals has enunciated the applicable standard in "a more succinct...." two-part analysis. *Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994). Part one considers "whether there is objective medical evidence of an underlying medical condition...." *Felisky*, 35 F.3d at 1038 (quoting *Duncan*, 801 F.2d at 853). If such objective medical evidence exists, then part two requires consideration of two alternative questions:

1. Whether objective medical evidence confirms the severity of the alleged pain [or other symptom] arising from the condition; or

2. Whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain [or other symptom].

*Felisky*, 35 F.3d at 1038-39 (quoting *Duncan*, 801 F.2d at 853).

Neither *Felisky's* two-part test nor the Regulations upon which it is based require objective medical evidence of pain itself. *Felisky*, 35 F.3d at 1039. The Commissioner promises through the Regulations, "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §416.929(c)(2). Consequently, the Regulations require ALJs to consider a list of factors including: the claimant's daily activities; the

13

location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications taken to alleviate symptoms; treatment, other than medication, obtained for symptom relief; any measures used to alleviate pain (e.g., lying flat, standing 15 or twenty minutes every hour, sleeping on a board, etc.); and other factors concerning the claimant's functional limitations. 20 C.F.R. §416.929(c)(3)(i)-(vii); *see* Social Security Ruling 96-7p.

An ALJ's findings concerning the credibility of a claimant's testimony about his or her pain or other symptoms "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.*

Contrary to Plaintiff's contentions, substantial evidence supports the ALJ's credibility determination. First, the ALJ did not err by weighing nurse Van Ausdal's opinion under the same regulatory factors applicable to treating or other so-called "acceptable medical sources." *See* Social Security Ruling 06-03p, 2006 WL 2329939 at *2, 4-5 ("Although the factors set forth in 20 C.F.R. 404.1527(d) and 416 927(d) explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'"); *see also* 20 C.F.R. §416.913(d)(listing nurse practitioners as one possible "other source").

The ALJ rejected Van Ausdal's opinion regarding the affect of pain on Plaintiff's mental work abilities because her opinion was contrary to those of an examining psychologist, Dr. Schulz, and a reviewing psychologist, Dr. Steiger. (Tr. 33). Dr. Steiger considered that Plaintiff had a pain disorder with psychological and medical features. (Tr. 216, 219). And Dr. Schulz was aware of Plaintiff's complaints of pain when he gave his opinion. (Tr. 431). In addition, the ALJ considered that nurse Van Ausdal had only limited contact with Plaintiff and that her findings appeared to be inconsistent with her

14

conclusions. (Tr. 33). Nurse Van Ausdal began seeing Plaintiff in July 2004. At that time, she noted that Plaintiff had a depressed mood, but her other mental status findings were largely normal. (Tr. 244). For instance, nurse Van Ausdal found Plaintiff's memory and concentration was fair, her psychomotor activity was normal, her thought processes were logical, her attitude was pleasant, her affect was full, and her speech was normal. (Tr. 244). Although nurse Van Ausdal noted that Plaintiff experienced fatigue and decreased energy, which presumably caused lack of movement, which in turn caused her pain to increase (Tr. 274), the ALJ adequately assessed Plaintiff's physical limitations caused by pain, based on the record evidence. Thus, the ALJ adequately assessed the effect of pain on Plaintiff's physical and mental abilities. The ALJ also pointed out that when nurse Van Ausdal offered her opinion, she had only limited contact with Plaintiff and that after March 2005, she had virtually no contact with Plaintiff. *Id.*

The ALJ also reasonably found that certain factors undermined Plaintiff's allegations of disabling pain. *See* Tr. 34. The ALJ reasonably recognized that there was "a large component of somatization with respect to the claimant's complaints of physical pain." (Tr. 32). The ALJ also reasonably noted that Plaintiff did not experience any side-effects from her medications. (Tr. 34). The ALJ cited Dr. Schulz's examination report indicating that Plaintiff had stated that she associated with extended family members daily. (Tr. 34, 430). Given this substantial evidence, the ALJ's credibility determination may not be overturned. *See Walters,* 127 F.3d at 531 ("ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.").

Accordingly, Plaintiff's challenges to the ALJ's credibility determination lack merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's final non-disability decision be affirmed; and

2. The case be terminated on the docket of this Court.


January 7, 2009	               s/ Sharon L. Ovington
	              Sharon L. Ovington
	           United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).